## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| FLEET CONNECT SOLUTIONS LLC, <br><br> Plaintiff, <br><br> V. <br><br> AUTOZONE, INC. <br><br> Defendant. | Civil Action No. 2:25-cv-00046 <br><br><br> **JURY TRIAL DEMANDED** |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Fleet Connect Solutions LLC (hereinafter, "Fleet Connect" or "Plaintiff") files this complaint against AutoZone, Inc. (hereinafter, "AutoZone" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1.      This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents"):

| | Patent | Title | Available At: |
|---|---|---|---|
| 1 | 6,429,810 | Integrated Air Logistics System | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6429810 |
| 2 | 8,005,053 | Channel Interference Reduction | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8005053 |
| 3 | 8,862,184 | System And Methods For Management Of Mobile Field Assets Via Wireless Handheld Devices | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8862184 |
| 4 | 6,941,223 | Method And System For Dynamic Destination Routing | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6941223 |

|   | Patent | Title | Available At: |
|---|--------|-------|---------------|
| 5 | 6,961,586 | Field Assessments Using Handheld Data Management Devices | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6961586 |
| 6 | 6,633,616 | OFDM Pilot Tone Tracking For Wireless LAN | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6633616 |
| 7 | 7,463,896 | System And Method For Enforcing A Vehicle Code | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7463896 |
| 8 | 6,647,270 | Vehicle Talk | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6647270 |
| 9 | 7,450,955 | System And Method For Tracking Vehicle Maintenance Information | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7450955 |
| 10 | 7,536,189 | System And Method For Sending Broadcasts In A Social Network | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7536189 |
| 11 | 7,599,715 | System And Method For Matching Wireless Devices | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7599715 |
| 12 | 7,701,360 | System And Method For Selective Navigation Tracking | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7701360 |

2.    Plaintiff seeks monetary damages.

## PARTIES

3.    Plaintiff is a limited liability company formed under the laws of Texas with its

registered office address located in Austin, Texas.

4.      On information and belief, Defendant is a corporation organized under the laws of the State of Nevada with its principal place of business located at 123 S Front St., Memphis, TN 38103, and mailing address at P.O. Box 2198, Memphis, TN 38101.

5.      Defendant may be served through its registered agent for service in Texas, CT Corporation System, located at 1999 Bryan St., STE 900, Dallas, Texas 75201.

6.      On information and belief, "Autozone [is] a national automotive supply retailer, runs about 360 trucks and 800 trailers in its private fleet. With over 450 drivers traveling approximately 45-47 million miles annually, the AutoZone fleet services over 5,000 stores in North America with 10 distribution centers in its network." https://transportation.trimble.com/resources/case-studies/autozone.

## JURISDICTION AND VENUE

7.      Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

8.      This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

9.      Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) because it maintains an established and regular place of business in this District and has committed acts of patent infringement in this District.  *See In re: Cray Inc.*, 871 F.3d 1355, 1362- 1363 (Fed. Cir. 2017).

10.      Defendant is subject to this Court's specific and general personal jurisdiction under due process and/or the Texas Long Arm Statute due at least to Defendant's substantial business in this judicial district, including: (i) at least a portion of the infringements alleged herein; and (ii)

regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this district.

11.     Specifically, Defendant intends to do and does business in, has committed acts of infringement in this District, and offers its services, including those accused of infringement here, to customers and potential customers located in Texas, including in the Eastern District of Texas.

12.     On information and belief, Defendant owns, operates, manages, conducts business, and directs and controls the operations and employees of facilities at several locations in this District, including, but not limited to, facilities at the following addresses: 1500 E Grand Ave, Marshall, TX, 75670; 3663 Estes Pkwy, Longview, TX, 75603; 714 W Marshall, Longview, TX, 75601; 2301 Gilmer Rd, Longview, TX, 75604; 1200 Hwy 259 N, Kilgore, TX, 75662; 800 W Panola, Carthage, TX, 75633; 708 US Hwy 271, Gilmer, TX, 75644. *See* AUTOZONE.COM, https://www.autozone.com/locations/tx.html.

13.     Defendant has committed acts of infringement from this District, including, but not limited to, use of the Accused Products.

## THE ASSERTED PATENTS AND ACCUSED PRODUCTS

14.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

15.     Defendant uses, causes to be used, sells, offers for sale, imports, provides, supplies, or distributes one or more Trimble fleet management platform and tracking solutions, including, but not limited to, the web-based TMT Fleet Maintenance platform (by Trimble), and Trimble telematics devices, including the TAG 200 (along with the TAG 200 "Trailer Tracking System"), TM3000, TRAILER4U, the Nomad 5, Trimble T10, Trimble T7, GFX-350, and Ranger 7, Yuma 2, Yuma 7, Juno T41C, Trimble TDC,  Trimble TDC6, Trimble R10 GNSS receiver, Trimble

TDC600, Trimble TDC100 SERIES, Trimble R750, Trimble Juno 3 Series, Trimble R12, Trimble R780, Trimble R980, Trimble TSC7 Controller, Settop M1, GFX-750, AX940 and AX940i, MPS865, GFX-1260, GFX-1060, PeopleNet Display5 and the Trimble Gateways (e.g., Connected Gateway, Mobile Gateway), Trimble ELDs (e.g., Trimble Duo, Duo Displays, T511 Onboard Computer, Mobile Gateway, PeopleNet Mobile Gateway (PMG), Trimble Connected Gateway, and connected vehicle device (CVD) Telematics), Trimble Inspection, and Trimble application ("Trimble App"), as well as PC Miler, Copilot, Mileon, and Trimble MAPS ("MAPS"), Ultramax Glass, Ultramax Glass 2*2 MIMO, third party tablets such as Samsung Tab Active5, Samsung Tab Active 4 Pro, Samsung Tab A7 Lite, Samsung Galaxy Tab Active 2, Samsung Galaxy Tab Active 3,  In-Vehicle Display Tablet, and Trimble driver apps such as Trimble Driver ELD application, Trimble driver HOS, Trimble Driver Auditing Software, Trimble Driver Workflow, Trimble ConnectedDriver app, ConnectedDriver Pro, Trimble Pulse driver logs, etc., Trimble Fleet Manager, Trimble Vehicle and Asset Tracking, Trimble Pulse fleet management, and Trimble Pulse telematics, including vehicle devices and in-cab tablets/ELD tablets, and associated hardware, software, and functionality (collectively, the "Accused Products").  *See* **Figures 1–3** (below); *see also* **Exhibits A–L** (Evidence of Use Charts Regarding Infringement of the Asserted Patents); *see also* https://transportation.trimble.com/resources/case-studies/autozone.



**Figure 1**
Source: https://transportation.trimble.com/resources/case-studies/autozone.



**Figure 2**
Source: https://transportation.trimble.com/resources/case-studies/autozone.



**Figure 3**
Source: https://transportation.trimble.com/resources/case-studies/autozone.

16.     The Accused Products perform wireless communications and methods associated with performing and/or implementing wireless communications including, but not limited to, wireless communications and methods pursuant to various protocols and implementations, including, but not limited to, LTE, Bluetooth, IEEE 802.11, and LTE protocols and various subsections thereof, including, but not limited to, 802.11ac, 802.11b, and 802.11n.

17.     The wireless communications perform and/or implemented by the Accused Products, among other things, transmit data over various media, compute time slot channels, generate packets for network transmissions, perform or cause to be performed error estimation in orthogonal

frequency division multiplexed ("OFDM") receivers, and various methods of processing OFDM symbols.

18.     For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

## COUNT I:   INFRINGEMENT OF U.S. PATENT NO. 6,429,810

19.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

20.     Fleet Connect owns all substantial rights, interest, and title in and to U.S. Patent No. 6,429,810 (the "'810 patent"), including the sole and exclusive right to prosecute this action and enforce the '810 patent against infringers and to collect damages for all relevant times.

21.     The United States Patent and Trademark Office ("USPTO") duly issued the '810 patent on August 6, 2002, after full and fair examination of Application No. 09/774,547 which was filed January 31, 2001.  *See*  '810 patent at 1.

22.     The claims of the '810 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting logistics and tracking systems.

23.     The written description of the '810 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

24.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations

required to collect pre-filing damages for the full period allowed by law for infringement of the '810 patent.

25.    Defendant has directly infringed one or more claims of the '810 patent by manufacturing, selling, offering for sale, importing, using, providing, supplying, or distributing the Accused Products.

26.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '810 patent, as detailed in **Exhibit A** (Evidence of Use Regarding Infringement of U.S. Patent No. 6,429,810).

27.    For example, as detailed in Exhibit A, Defendant, through the use and provision of the Accused Products, performs a method of providing container status information to a user.  The method includes attaching an electronic communications unit to a shipping container; generating a transaction identification code, wherein said transaction identification code is specific to said shipping container and specific to at least one user transaction; initiating a status inquiry utilizing said transaction identification code, wherein said user performs said initiating step; receiving said status inquiry by a ground communications system; transmitting said status inquiry to said electronic communications unit by said ground communications system; obtaining a status information response by said electronic communications unit; transmitting said status information response to said ground communications system by said electronic communications unit; and forwarding said status information response to said user by said ground communications system.

28.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II:  INFRINGEMENT OF U.S. PATENT NO. 8,005,053

29.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

30.     Fleet Connect owns all substantial rights, interest, and title in and to U.S. Patent No. 8,005,053 (the "'053 patent", including the sole and exclusive right to prosecute this action and enforce the '053 patent against infringers and to collect damages for all relevant times.

31.     The USPTO duly issued the '053 patent on August 23, 2011, after full and fair examination of Application No. 12/696,760, which was filed on January 29, 2010.  *See* '053 patent at 1.

32.     The claims of the '053 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

33.     The written description of the '053 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

34.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '053 patent.

35.     Defendant has directly infringed one or more claims of the '053 patent by manufacturing, selling, offering for sell, importing, using, providing, supplying, or distributing the Accused Products.

36.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '053 patent, as detailed in **Exhibit B** (Evidence of Use Regarding Infringement of U.S. Patent No. 8,005,053).

37.     For example, as detailed in Exhibit B, the Accused Products include an apparatus comprising: a first wireless transceiver configured to communicate data according to a first wireless protocol;  a second wireless transceiver configured to communicate data according to a second wireless protocol that is different from the first wireless protocol; and a controller configured to select one of the first and second wireless transceivers to communicate data of both the first and second wireless protocols,  wherein the apparatus is configured to encode data of the wireless protocol for the unselected transceiver into data of the wireless protocol for the selected transceiver.

38.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 8,862,184

39.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

40.     Fleet Connect owns all substantial rights, interest, and title in and to U.S. Patent No. 8,862,184 (the "'184 patent"), including the sole and exclusive right to prosecute this action and enforce the '184 patent against infringers and to collect damages for all relevant times.

41.    The USPTO duly issued the '184 patent on October 14, 2014, after full and fair examination of Application No. 13/925,692, which was filed on June 24, 2013.  *See* '184 patent at 1.

42.    The claims of the '184 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods and systems of collecting and communicating field data based on geographical location.

43.    The written description of the '184 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

44.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '184 patent.

45.    Defendant has directly infringed one or more claims of the '184 patent by manufacturing, selling, offering for sale, importing, using, providing, supplying, or distributing the Accused Products.

46.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '184 patent, as detailed in **Exhibit C** (Evidence of Use Regarding Infringement of U.S. Patent No. 8,862,184).

47.    For example, as detailed in Exhibit C, Defendant, through the use and provision of the Accused Products, performs a method, comprising downloading a field assessment program to a

handheld device from a server geographically distant from the handheld device; executing the field assessment program on the handheld device, the field assessment program configured to enable assessment of a job; collecting data associated with the job in response to prompts from the field assessment program; obtaining information associated with a location of the job based at least part on determining the location of the job; rendering the collected data using the handheld device based at least in part on the obtained information; and providing the assessment of the job in response to the rendering.

48.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV: <u>INFRINGEMENT OF U.S. PATENT NO. 6,941,223</u>

49.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

50.    U.S. Patent No. 6,941,223 (the "'223 patent") was issued on September 6, 2005 after full and fair examination by the USPTO of Application No. 10/339,663 which was filed on January 10. 2003.  *See* '223 patent at 1.

51.    Fleet Connect owns all substantial rights, interest, and title in and to the '223 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

52.    The claims of the '223 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include

inventive components that improve upon the function and operation of preexisting routing and navigation systems.

53.    The written description of the '223 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

54.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '223 patent.

55.    Defendant has directly infringed one or more claims of the '223 patent by manufacturing, selling, offering for sell, importing, using, providing, supplying, or distributing the Accused Products.

56.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 19 of the '223 patent, as detailed in **Exhibit D** (Evidence of Use Regarding Infringement of U.S. Patent No. 6,941,223).

57.    For example, as detailed in Exhibit D, Defendant, through the use and provision of the Accused Products, performs a method for destination routing of a vehicle.  The method includes the acts of: determining, based on static information, an optimal route, receiving additional information, determining, based on a comparison of real travel parameters of the vehicle with travel parameters associated with the optimal route, whether the optimal route remains optimal, and determining a new optimal route when the optimal route does not remain optimal, wherein the

new optimal route is determined using the additional information, wherein the travel parameters include at least one of travel time and traveled distance.

58.    Fleet Connect is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V:  **INFRINGEMENT OF U.S. PATENT NO. 6,961,586**

59.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

60.    The USPTO duly issued U.S. Patent No. 6,961,586 (the "'586 patent") on November 1, 2005 after full and fair examination of Application No. 09/955,543 which was filed on September 17, 2001.  *See* '586 patent at 1.

61.    Fleet Connect owns all substantial rights, interest, and title in and to the '586 patent, including the sole and exclusive right to prosecute this action and enforce the '586 patent against infringers and to collect damages for all relevant times.

62.    The claims of the '586 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting communication systems and methods for executing field operations using handheld devices.

63.    The written description of the '586 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and

improved upon what may have been considered conventional or generic in the art at the time of the invention.

64.    Defendant has directly infringed one or more claims of the '586 patent by manufacturing, selling, offering for sale, importing, using, providing, supplying, or distributing the Accused Products.

65.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 9 of the '586 patent, as detailed in **Exhibit E** (Evidence of Use Regarding Infringement of U.S. Patent No. 6,961,586).

66.    For example, as detailed in Exhibit E, Defendant, through the use and provision of the Accused Products, performs a method of conducting a field assessment using a handheld data management device, comprising: providing a hand held data management device user performing as a field assessor access to an industry-specific field assessment program module for enabling the field assessor to execute at least one of the following field assessments: construction industry project analysis, HVAC system analysis; project management, equipment readiness, system and equipment troubleshooting, remote inventory tracking and ordering, conducting legal investigations in the field, and multi-users remote function coordination; executing said program module to conduct the field assessment; providing field-specific information required by said program module for said program module to render data in support of said field assessment; and retrieving data through said handheld data management device in support of said field assessment.

67.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '586 patent.

68.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI: <u>INFRINGEMENT OF U.S. PATENT NO. 6,633,616</u>

69.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

70.     Fleet Connect owns all substantial rights, interest, and title in and to U.S. Patent No. 6,633,616 (the "'616 patent"), including the sole and exclusive right to prosecute this action and enforce the '616 patent against infringers and to collect damages for all relevant times.

71.     The United States Patent and Trademark Office duly issued the '616 patent on October 14, 2003, after full and fair examination of Application No. 09/935,081 which was filed August 21, 2001.  *See* '616 patent at 1.

72.     The claims of the '616 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting error estimation methods in orthogonal frequency division multiplexed (OFDM) systems.

73.     The written description of the '616 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

74.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '616 patent.

75.    Defendant has directly infringed one or more claims of the '616 patent by manufacturing, selling, offering for sale, importing, using, providing, supplying, or distributing the Accused Products.

76.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 12 of the '616 patent, as detailed in **Exhibit F** (Evidence of Use Regarding Infringement of U.S. Patent No. 6,633,616).

77.    For example, as detailed in Exhibit F, Defendant, through the use and provision of the Accused Products, performs a method of pilot phase error estimation in an orthogonal frequency division multiplexed (OFDM) receiver.  The method includes determining pilot reference points corresponding to a plurality of pilots of an OFDM preamble waveform; processing, in a parallel path to the determining step, the OFDM preamble waveform with a fast Fourier transform; determining a phase error estimate of a subsequent OFDM symbol relative to the pilot reference points; and processing, in the parallel path to the determining step, the subsequent OFDM symbol with the fast Fourier transform; wherein the determining the phase error estimate step is completed prior to the completion of the processing the subsequent OFDM symbol with the fast Fourier transform in the parallel path.

78.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VII: <u>INFRINGEMENT OF U.S. PATENT NO. 7,463,896</u>

79.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

80.     The USPTO duly issued U.S. Patent No. 7,463,896 (the "'896 patent") on December 9, 2008 after full and fair examination of Application No. 11/542,850 which was filed on September 20, 2006.  *See* '896 patent at 1.  A Certificate of Correction was issued on August 13, 2013.  *See id.* at 18.

81.     Fleet Connect owns all substantial rights, interest, and title in and to the '896 patent, including the sole and exclusive right to prosecute this action and enforce the '896 patent against infringers and to collect damages for all relevant times.

82.     The claims of the '896 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems for wireless vehicle tracking systems.

83.     The written description of the '896 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

84.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '896 patent.

85.    Defendant has directly infringed one or more claims of the '896 patent by manufacturing, selling, offering for sale, importing, using, providing, supplying, or distributing the Accused Products.

86.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '896 patent, as detailed in **Exhibit G** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,463,896).

87.    For example, as detailed in Exhibit G, Defendant, through the use and provision of the Accused Products, performs a method for enforcing a vehicle code.  The method includes receiving a wireless communication signal by a first mobile unit having a unique identifier, the wireless communication signal transmitted by a second mobile unit associated with a vehicle; downconverting data in the received wireless communication signal from radio frequency to baseband; determining based on the downconverted data: a vehicle identifier associated with the vehicle, and a GPS position associated with the vehicle; determining by a system administrator a status of the vehicle using the vehicle identifier to monitor the vehicle for code enforcement, wherein the determining the status includes parsing the received wireless communication signal to determine the status of the vehicle; generating baseband message data indicating the status by constructing at least one data packet from a plurality of data fields, the data fields including the unique identifier of the first mobile unit and the vehicle identifier; and upconverting the baseband message data to radio frequency for transmission to the second mobile unit, thereby transmitting the upconverted baseband message data indicating the status of the vehicle.

88.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and

costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VIII:   INFRINGEMENT OF U.S. PATENT NO. 6,647,270

89.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

90.    Fleet Connect owns all substantial rights, interest, and title in and to U.S. Patent No. 6,647,270 (the "'270 patent"), including the sole and exclusive right to prosecute this action and enforce the '270 patent against infringers and to collect damages for all relevant times.

91.    The USPTO duly issued the '270 patent on November 11, 2003, after full and fair examination of Application No. 09/659,074 which was filed September 11, 2000.  *See* '270 patent at 1.

92.    The claims of the '270 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of mobile communications and tracking systems.

93.    The written description of the '270 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

94.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '270 patent.

95.    Defendant has directly infringed one or more claims of the '270 patent by manufacturing, selling, offering for sell, importing, using, providing, supplying, or distributing the Accused Products.

96.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '270 patent, as detailed in **Exhibit H** (Evidence of Use Regarding Infringement of U.S. Patent No. 6,647,270).

97.    For example, as detailed in Exhibit H, the Accused Products include a system for transmitting voice or data communications comprising a plurality of data packets between a plurality of remote units, each remote unit having a unique identifier; whereby each remote unit includes:  a memory for storing a unique identifier; a transceiver for receiving a wireless communication and downconverting said received communication from RF to baseband, and for upconverting a baseband communication to RF for transmission as a transmit wireless communication; a GPS receiver, for outputting a position signal; a microprocessor, for receiving said position signal and said downconverted communication, and for generating said baseband communication; whereby said microprocessor generates said baseband communication by constructing said data packets from a plurality of data fields, including sender information and receiver information, whereby said sender information includes: the unique identifier of the sender, and information derived from said position signal; and whereby said receiver information includes: the address of the desired remote unit.

98.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

Infringement of United States Patent No. 7,450,955

### COUNT IX: <u>INFRINGEMENT OF U.S. PATENT NO. 7,450,955</u>

99.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

100.     U.S. Patent No. 7,450,955 (the "'955 patent") was issued on November 11, 2008 after full and fair examination by the USPTO of Application No. 11/524,858 which was filed on September 20, 2006.  *See* '955 patent at 1.  A Certificate of Correction was issued on September 24, 2013.  *See id.* at 19.  A second Certificate of Correction was issued on May 1, 2018.  *See id.* at 20.

101.     The claims of the '955 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods and systems for tracking vehicle maintenance information.

102.     The written description of the '955 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

103.     Fleet Connect owns all substantial rights, interest, and title in and to the '955 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

104.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '955 patent.

105.     Based upon public information, Fleet Connect is informed and believes that Defendant has infringed one or more claims of the '955 Patent because it ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises the Accused Products.

106.     Upon information and belief, the Accused Products meet each and every step of at least Claim 1 of the '955 Patent, either literally or equivalently, as detailed in **Exhibit I** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,450,955).

107.     For example, as detailed in <u>Exhibit I</u>, Defendant performs a method for tracking vehicle maintenance information by a system administrator.  The method includes identifying by the system administrator a vehicle associated with a vehicle identifier of a receiving mobile unit; determining a warning associated with the vehicle; generating baseband message data indicating the warning by constructing at least one data packet from a plurality of data fields, the data fields including a unique identifier of a transmitting mobile unit, and the vehicle identifier of the receiving mobile unit; upconverting the baseband message data to radio frequency for transmission to the receiving mobile unit; transmitting the upconverted baseband message data from the transmitting mobile unit to the receiving mobile unit, thereby indicating the warning; and receiving a confirmation of receipt from the receiving mobile unit including parsing the confirmation of receipt to confirm the warning was received.

108.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '955 patent.

109.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest

and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT X:  INFRINGEMENT OF U.S. PATENT NO. 7,536,189**

110.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

111.     The United States Patent and Trademark Office ("USPTO") duly issued U.S. Patent No. 7,536,189 (the "'189 patent") on May 19, 2009, after full and fair examination of Application No. 12/018,588, which was filed on January 23, 2008.  *See* '189 patent at 1.  A Certificate of Correction was issued on June 25, 2013.  *See id.* at 22.

112.     Fleet Connect owns all substantial rights, interest, and title in and to the '189 patent, including the sole and exclusive right to prosecute this action and enforce the '189 patent against infringers and to collect damages for all relevant times.

113.     The claims of the '189 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods for broadcasting advisory communications to remote units.

114.     The written description of the '189 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

115.     Defendant has directly infringed the '189 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products.

116.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '189 patent, as detailed in **Exhibit J** (Evidence of Use Regarding

Infringement of U.S. Patent No. 7,536,189).

117.    For example, as detailed in Exhibit J, Defendant, using the Accused Products, performs a method for a system administrator to broadcast an advisory communication to at least one remote unit.  The method includes accessing a website by a system administrator to send an advisory communication, the website comprising an audio-visual interface for inputting the advisory communication; filtering a plurality of remote units by the system administrator operating the website, the filtering being based upon at least one information field to determine from the plurality of remote units at least one of a first remote unit and a second remote unit to receive a broadcast of the advisory communication; assembling at least one packet of the advisory communication, the at least one packet comprising at least one of: a first packet comprising a data message for the first remote unit, and a second packet comprising a voice message for the second remote unit; forwarding the at least one packet to a router for transmission transmitting the at least one packet to alert at least one of the first remote unit and the second remote unit of the advisory communication; and storing, by the website, a log associated with the advisory communication.

118.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '189 patent.

119.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT XI: INFRINGEMENT OF U.S. PATENT NO. 7,599,715

120.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

121.    The USPTO duly issued U.S. Patent No. 7,599,715 (hereinafter, the "'715 patent") on October 6, 2009 after full and fair examination by the USPTO of Application No. 12/389,245 which was filed on February 19, 2009.  A Certificate of Correction was issued on June 25, 2013.

122.    Fleet Connect owns all substantial rights, interest, and title in and to the '715 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

123.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '715 patent.

124.    The claims of the '715 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of mobile communications system control and warning systems.

125.    The written description of the '715 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

126.    Defendant has directly infringed one or more claims of the '715 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

127.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 31 of the '715 patent, as detailed in **Exhibit K** (Evidence of Use Regarding

Infringement of U.S. Patent No. 7,599,715).

128.    For example, as detailed in <u>Exhibit K</u>, Defendant, using the Accused Products, performs a method of tracking vehicle maintenance information by a wireless communication system, comprising:    receiving a signal transmitted by a vehicle comprising a mobile unit, the signal comprising a vehicle identifier and a status of the vehicle;  storing the signal in a first communication log, the first communication log including the vehicle identifier, a transmission time, a transmission date, and the status;  determining maintenance information associated with the vehicle, the determining comprises parsing the signal to determine the vehicle identifier and the status;    constructing a communication comprising at least one communication packet, the at least one communication packet comprising the maintenance information, an address, and an identification of the vehicle;  forwarding the at least one communication packet to a router; transmitting the at least one communication packet over the Internet by the router via the address; and  storing the communication through the Internet in a second communication log.

129.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT XII: <u>INFRINGEMENT OF U.S. PATENT NO. 7,701,360</u>

130.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

131.    U.S. Patent No. 7,701,360 (the "'360 patent") was issued on April 20, 2010 after full and fair examination by the USPTO of Application No. 12/143,715 which was filed on June 20, 2008.  *See* '360 patent at 1.

132.    The claims of the '360 patent are not directed to an abstract idea and are not limited to

well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods and systems for tracking vehicle maintenance information.

133.    The written description of the '360 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

134.    Fleet Connect owns all substantial rights, interest, and title in and to the '360 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

135.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '360 patent.

136.    Based upon public information, Fleet Connect is informed and believes that Defendant has infringed one or more claims of the '360 Patent because it ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises the Accused Products.

137.    Upon information and belief, the Accused Products meet each and every step of at least Claim 1 of the '360 Patent, either literally or equivalently, as detailed in **Exhibit L** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,701,360).

138.    For example, as detailed in Exhibit L, Defendant performs a method for operating a navigational display. The method comprises displaying on a navigation display a navigation routing of a trip having a plurality of points along said routing; receiving data under control of a

processor associated with said display from at least one transmitting device remote from said navigation display, said transmitting device being an environmental sensor positioned at ones of said points and operable for sending environmental data pertaining to a point where said sensor is positioned, said received data from each said device pertaining to environmental conditions at said point of each said device, said received data containing, in addition to said environmental condition data, geographical position data corresponding to said location of each said device; and overlaying under control of said processor said received environmental data on said displayed navigation routing at the appropriate geographical trip point corresponding to said environmental data, each said appropriate geographical point based upon said received geographical position data pertaining to said point.

139.    Since at least the time of receiving notice of the filing of this action, Defendant has also indirectly infringed one or more claims of the '360 patent by inducing others to directly infringe said claims. Defendant has induced end-users, including, but not limited to, its employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '360 patent by providing or requiring use of the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '360 patent, including, for example, claim 1. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant performed these steps, which constitute induced infringement with the knowledge of the '360 patent and with the knowledge that the induced acts constitute infringement. Defendant

was aware that the normal and customary use of the Accused Products by others would infringe the '360 patent. Defendant's inducement is ongoing.

140.    Defendant has also indirectly infringed by contributing to the infringement of the '360 patent. Defendant has contributed to the direct infringement of the '360 patent by their personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '360 patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the '360 patent and are not staple articles of commerce suitable for substantial non-infringing use.

141.    Defendant has had knowledge of the '360 Patent since at least the time it received notice of the filing of this action.

142.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of Fleet Connect's patent rights.

143.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

144.    Defendant's direct infringement of the '360 patent was willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights under the patent.

145.    Defendant's aforesaid activities have been without authority and/or license from Fleet Connect.

146.    Fleet Connect is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court

under 35 U.S.C. § 284.

## DEMAND FOR JURY TRIAL

147.    Fleet Connect hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

148.    WHEREFORE, Fleet Connect requests that the Court find in its favor and against Defendant, and that the Court grant Fleet Connect the following relief:

a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b.    Judgment that Defendant account for and pay to Fleet Connect all damages to and costs incurred by Fleet Connect because of Defendant's infringing activities and other conduct complained of herein;

c.    Pre-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

d.    That this Court declare this an exceptional case and award Fleet Connect its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

e.    All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>January 16, 2025</u>                              Respectfully submitted,

                                                           By:<u>/s/ James F. McDonough, III</u>

                                                           James F. McDonough, III (GA 117088) *
                                                           **ROZIER HARDT MCDONOUGH PLLC**
                                                           659 Auburn Avenue NE, Unit 254
                                                           Atlanta, Georgia 30312
                                                           Telephone: (404) 564-1866
                                                           Email: jim@rhmtrial.com

                                                           Jonathan Hardt (TX 24039906) *
                                                           **ROZIER HARDT MCDONOUGH PLLC**
                                                           712 W. 14th Street, Suite A
                                                           Austin, Texas 78701
                                                           Telephone: (210) 289-7541
                                                           Email: hardt@rhmtrial.com

                                                           C. Matthew Rozier (CO 46854) *
                                                           **ROZIER HARDT MCDONOUGH PLLC**
                                                           1500 K Street, 2nd Floor
                                                           Washington, District of Columbia 20005
                                                           Telephone: (404) 779-5305; (202) 316-1591
                                                           Email: matt@rhmtrial.com

                                         *Attorneys for **FLEET CONNECT SOLUTIONS** LLC*

                                                                *Admitted to the Eastern District of Texas

**List of Exhibits:**

A.  Evidence of Use Regarding Infringement of U.S. Patent No. 6,429,810

B.  Evidence of Use Regarding Infringement of U.S. Patent No. 8,005,053

C.  Evidence of Use Regarding Infringement of U.S. Patent No. 8,862,184

D.  Evidence of Use Regarding Infringement of U.S. Patent No. 6,941,223

E.  Evidence of Use Regarding Infringement of U.S. Patent No. 6,961,586

F.  Evidence of Use Regarding Infringement of U.S. Patent No. 6,633,616

G.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,463,896

H.  Evidence of Use Regarding Infringement of U.S. Patent No. 6,647,270

I.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,450,955

J.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,536,189

K.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,599,715

L.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,701,360

**List of Supportive Links**

1.  U.S. Patent No. 6,429,810, USPTO.GOV, https://patentcenter.uspto.gov/applications/09774547 , https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6429810.

2.  U.S. Patent No. 8,005,053, USPTO.GOV, https://patentcenter.uspto.gov/applications/12696760, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8005053.

3.  U.S. Patent No. 8,862,184, USPTO.GOV, https://patentcenter.uspto.gov/applications/13925692, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8862184.

4.  U.S. Patent No. 6,941,223, USPTO.GOV, https://patentcenter.uspto.gov/applications/10339663, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6941223.

5.  U.S. Patent No. 6,961,586, USPTO.GOV, https://patentcenter.uspto.gov/applications/09955543, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6961586.

6.  U.S. Patent No. 6,633,616, USPTO.GOV, https://patentcenter.uspto.gov/applications/09935081, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6633616.

7.  U.S. Patent No. 7,463,896, USPTO.GOV, https://patentcenter.uspto.gov/applications/11524850, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7463896.

8.  U.S. Patent No. 6,647,270, USPTO.GOV, https://patentcenter.uspto.gov/applications/09659074, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6647270.

9.  https://transportation.trimble.com/resources/case-studies/autozone.